# PERKINSCOie

1120 NW Couch Street
10th Floor
Portland, OR 97209-4128

☎ +1.503.727.2000
🖷 +1.503.727.2222
perkinscoie.com

August 3, 2015

Jeffrey M. Peterson
JeffreyPeterson@perkinscoie.com
D. +1.503.727.2075
F. +1.503.346.2075

**VIA U.S. MAIL**

Robynne A. Fauley
12125 SE Laughing Water Road
Sandy, Oregon 97055

Ariel's Skin Care
Attn: Robynne A. Fauley
1734 NE 42nd Ave
Portland, Oregon 97213

**Re:**   *LNV Corp. v. Fauley, et al.*, **Case No. 3:15-cv-1422-HZ**
         **U.S. District Court for the District of Oregon**

Dear Ms. Fauley:

My firm represents LNV Corporation in the action referenced above. Pursuant to Federal Rule of Civil Procedure 4(e)(1) and Oregon Rule of Civil Procedure 7 D(2)(c), office service was made at Ariel's Skin Care, at 1734 NE 42nd Ave., Portland, OR 97213, on July 31, 2015 at 11:46 am. Enclosed is a copy of the Summons, Complaint, docket item no. 3, and the Court's ECF notice regarding docket item no. 3.

Respectfully,

*[signature]*

Jeffrey M. Peterson

JMP

Enclosures

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | |
|---|---|
| LNV CORPORATION, a Nevada Corporation | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 3:15-cv-01422-HZ |
| ROBYNNE A. FAULEY, a citizen of the State of Oregon; and U.S. BANK NATIONAL ASSOCIATION | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Robynne A. Fauley
12125 Southeast Laughing Water Road
Sandy, Oregon 97055

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

MARY L. MORAN, Clerk of Court

Date: __07/30/2015__

By: D. St. Germain, Deputy Clerk

Exhibit 1
Page 2 of 47

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   3:15-cv-01422-HZ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❒ I personally served the summons on the individual at *(place)* _____

on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                              *Server's signature*

                                      _____
                                              *Printed name and title*


                                      _____
                                              *Server's address*

Additional information regarding attempted service, etc:

Exhibit 1
Page 3 of 47

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Oregon

| | |
|---|---|
| LNV CORPORATION, a Nevada Corporation | ) ) ) ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 3:15-cv-01422-HZ |
| ROBYNNE A. FAULEY, a citizen of the State of Oregon; and U.S. BANK NATIONAL ASSOCIATION | ) ) ) ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   U.S. Bank
Attn: Any Branch Officer
321 SW 6th Ave
Portland, OR 97204


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:




If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


**MARY L. MORAN, Clerk of Court**

Date: **07/30/2015**

By: **/s/D. St. Germain, Deputy Clerk**

Exhibit 1
Page 4 of 47

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   3:15-cv-01422-HZ

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   Robynne A. Fauley

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

Exhibit 1
Page 5 of 47

Erick J. Haynie, OSB No. 982482
EHaynie@perkinscoie.coie
Gabrielle D. Richards, OSB No. 114992
GRichards@perkinscoie.com
Jeffrey M. Peterson, OSB No. 115723
JeffreyPeterson@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiff LNV Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LNV CORPORATION**, a Nevada Corporation,<br><br>                          Plaintiff,<br><br>          v.<br><br>**ROBYNNE A. FAULEY**, a citizen of the State of Oregon; and **U.S. BANK NATIONAL ASSOCIATION**,<br><br>                          Defendants. | Case No. _____<br><br>COMPLAINT |

Plaintiff LNV Corporation ("Lender"), for its complaint, alleges as follows:

**PARTIES**

**1.**

Lender is a corporation duly formed under the laws of the State of Nevada, with its

principal place of business in the state of Texas.

1-    COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit 1
Page 6 of 47

**2.**

Defendant Robynne A. Fauley ("Borrower") is an individual citizen and resident of the State of Oregon.

**3.**

Defendant U.S. Bank National Association ("U.S. Bank") is a national banking association and a citizen of Ohio.

## JURISDICTION AND VENUE

**4.**

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

**5.**

Venue is proper in the District of Oregon because Borrower resides in the State of Oregon and the real property at issue in this case is located in the State of Oregon.

## FACTS AND BACKGROUND

**6.**

The real property at issue in this case (the "Property") is legally described as Parcel 1, Partition Plat No. 1999-041, in the County of Clackamas and State of Oregon.  The Property is commonly known as 12125 Southeast Laughing Water Road, Sandy, Oregon 97055.

**7.**

On June 12, 2002, Washington Mutual Bank, F.A. ("Original Lender") made a $330,000 loan (the "Loan") to Borrower.

**8.**

The Loan is evidenced by that certain Note (the "Note") dated June 12, 2002, in the principal amount or $330,000.00, signed by Borrower and delivered to Original Lender.  A true and correct copy of the Note is attached hereto as **Exhibit A**.

2-   COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit 1
Page 7 of 47

**9.**

Pursuant to the terms of the Note, the entire unpaid balance of the Loan is due and payable on the earlier of July 1, 2032, or upon acceleration of the Loan.

**10.**

The performance of Borrower's obligations under the Note are secured by a first position lien on the Property, as evidenced by that certain deed of trust ("Trust Deed") dated June 12, 2002 and recorded in the official records of Clackamas County, Oregon as Instrument No. 2002-057800 on June 20, 2002.  A true copy of the Trust Deed is attached as **Exhibit B**.

**11.**

The Note, the Trust Deed, and all other documents that evidence, secure, or relate to the Loan are hereinafter collectively referred to as the "Loan Documents."

**12.**

Original Lender negotiated the Note to Residential Funding Corporation by indorsing the Note to the order of Residential Funding Corporation and delivering possession thereto.

**13.**

Residential Funding Corporation negotiated the Note to Deutsche Bank Trust Company Americans as Trustee ("Deutsche Bank") by indorsing the Note to the order of Deutsche Bank and delivering possession thereto.

**14.**

Deutsche Bank negotiated the Note to Residential Funding Company, LLC by indorsing the Note to the order of Residential Funding Company, LLC and delivering possession thereto.

**15.**

Residential Funding Company, LLC negotiated the Note to Lender by indorsing the Note to the order of Lender and delivering possession thereto.

**16.**

Lender is currently in possession of the original Note and all of the above endorsements.

3-   COMPLAINT

79707-0018/LEGAL126996654.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit 1
Page 8 of 47

**17.**

Lender is the current beneficiary of the Trust Deed: (1) by virtue of being the current payee and holder of the Note (performance of which the Trust Deed secured) indorsed to the order of Lender, and (2) pursuant to a series of duly executed and publicly recorded assignments of the Trust Deed, concluding with an assignment from Residential Funding Company, LLC to Lender, originally recorded on October 31, 2008 and re-recorded on April 17, 2012 in the official records of Clackamas County, Oregon, as Instrument Nos. 2008-074677 and 2012-023399. True and correct copies of the Trust Deed assignments are attached hereto as **Exhibit C**.

**18.**

Borrower breached the Note and Trust Deed by, among other things, failing to make payments when due. On or about August 15, 2012, Lender's loan subservicer sent Borrower a Notice of Default.

**19.**

Borrower has not cured the defaults, and the Note and Trust Deed, therefore, remain in default.

**20.**

Lender has not waived Borrower's defaults.

**21.**

Under Section 6 of the Note and Section 22 of the Trust Deed, Lender has declared and hereby declares the entire balance of principal, interest, and all sums secured by the Trust Deed now due and payable.

**22.**

U.S. Bank is the beneficiary of a second deed of trust recorded on October 31, 2003 in the official records of Clackamas County, Oregon, as Instrument Nos. 2003-146278. The second deed of trust is subsequent, subject, and inferior to the Trust Deed.

4- COMPLAINT

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Exhibit 1
Page 9 of 47

**23.**

On October 12, 2005, Borrower filed for protection under Chapter 7 of the United States Bankruptcy Code, in the United States Bankruptcy Court, District of Oregon, Case No. 05-46193-tmb7.  A Discharge of debt was granted on February 1, 2006.

**24.**

This suit is not an attempt to collect a debt against Borrower and, therefore, does not violate the Bankruptcy Discharge Order.  This is an action to execute upon the Property as security for the debt owed under the terms of the Note and Trust Deed, and to foreclose all right, title, and interest of the Defendants, each and all of them, in the Property.

**25.**

In April 2013, Borrower filed a complaint in Clackamas County Circuit Court against Lender and several other defendants.  The case was subsequently removed to this Court and was captioned *Fauley v. Washington Mutual Bank FA, et al.*, Case No. 3:13-cv-00581-MO (the "Prior Action").  Borrower's complaint alleged various claims against Lender arising out of and relating to the Loan Documents.  By opinion and order dated November 4, 2014, Judge Mossman dismissed the Prior Action as against Lender and all other defendants, with prejudice.

**26.**

As of July 22, 2015, there was and still is due, owing, and payable on the Loan: (a) the principal sum of $297,689.08; (b) accrued interest in the amount of $116,109.77; (c) disbursements and advances of $27,119.99; (d) late charges of $2,182.70; and (e) miscellaneous charges, recording fees, inspection fees, foreclosure costs, attorney fees, and costs of suit not yet determined.  Interest on the unpaid principal accrues at the contractual yearly rate of 7.125% until the full amount of the principal has been repaid.  Thus, an additional $58.11 in interest must be added to the amount due for each day after July 22, 2015 to calculate the total amount due under the Loan.

5-   COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit 1
Page 10 of 47

**27.**

Section 22 of the Trust Deed provides that, following an event of default, Lender "may invoke the power of sale and any other remedies permitted by Applicable Law."

**28.**

On or about January 7, 2015, Lender duly executed an Oregon Foreclosure Avoidance Program Beneficiary Affidavit and delivered the same to the attorney general of Oregon. The affidavit evidences Lender's qualification for exemption from the provisions of ORS 86.726(2) and (3). A true and correct copy of the affidavit is attached hereto as **Exhibit D**.

## FIRST CAUSE OF ACTION
### (Judicial Foreclosure of Trust Deed)

**29.**

Lender re-alleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 28 above.

**30.**

On June 12, 2002, for valuable consideration, Borrower executed and delivered to Original Lender the Loan Documents, including the Trust Deed encumbering the Property.

**31.**

The Trust Deed is given to secure payment of the Note and performance of all of Borrower's obligations under the Loan Documents.

**32.**

Original Lender caused the Trust Deed to be duly recorded in the public records of Clackamas County.

**33.**

By virtue of the negotiation of the Note, Lender is the holder of the Note and the beneficiary of the Trust Deed.

6-   COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit 1
Page 11 of 47

**34.**

Borrower has defaulted on her obligations under the Note and Trust Deed.

**35.**

Lender has performed all its obligations under the Note and Trust Deed.

**36.**

There are no other proceedings for the foreclosure of the Trust Deed. Lender has no adequate remedy at law.

**37.**

Lender is entitled to the judicial foreclosure of the Trust Deed and the sale of the Property as provided for by law and by the Trust Deed.

**38.**

Lender is entitled to a declaration that all other interests in the Property are inferior and subordinate to Lender's Trust Deed.

**39.**

In the event of foreclosure and sale of the Property, Lender or any other purchaser at the sale should be entitled to immediate possession of the Property.

**40.**

Lender is entitled to recover its reasonable attorney fees and costs incurred in bringing this action for judicial foreclosure, pursuant to Section 6(E) of the Note and Section 22 of the Trust Deed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff LNV Corporation prays for the following relief:

A.      Judgment in favor of Lender, and against Borrower, in the amount of $443,101.54, plus prejudgment interest after July 22, 2015 accruing at the yearly rate of 7.125%, post judgment interest, advances made by Lender to protect its interests, and any other amounts to which Lender is entitled by law or pursuant to the Loan Documents (the "Judgment");

7-   COMPLAINT

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit 1
Page 12 of 47

B.      That it be further adjudged that: (1) the Trust Deed is valid; (2) the Trust Deed is superior to any interest, lien, right, title, or claim of the Defendants or any of them in the Property; (3) the foreclosure sale of the Property occur in the manner prescribed by law; (4) the proceeds from such sale first be applied to the costs of the sale and then toward satisfaction of the Judgment; (5) Lender is entitled to be a bidder and purchaser at the foreclosure sale of the Property; and (6) the Defendants, and each of them, and all persons claiming by, through, or under any of them as purchasers, encumbrancers, or otherwise are forever foreclosed of all interest or claim in the Property except for any statutory right of redemption.

C.      For judgment against Borrower for Lender's costs of suit including reasonable attorney fees, as allowed under the Loan Documents; and,

D.      For such other relief as the Court may deem just and proper.

DATED: July 29, 2015                    **PERKINS COIE** LLP


By: *s/Erick J. Haynie*
    **Erick J. Haynie**, OSB No. 982482
    EHaynie@perkinscoie.coie
    **Gabrielle D. Richards**, OSB No. 114992
    GRichards@perkinscoie.com
    **Jeffrey M. Peterson**, OSB No. 115723
    JeffreyPeterson@perkinscoie.com
    1120 N.W. Couch Street, Tenth Floor
    Portland, OR  97209-4128
    Telephone:  503.727.2000
    Facsimile:  503.727.2222

Attorneys for Plaintiff LNV Corporation

8-   COMPLAINT

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Exhibit 1
Page 13 of 47

LOAN #: ▮▮▮▮▮▮

# NOTE

JUNE 12, 2002                      PORTLAND,                                          OREGON
[Date]                               [City]                                         [State]

12125 SOUTHEAST LAUGHING WATER ROAD, SANDY, OR 97055
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.    $330,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WASHINGTON MUTUAL BANK, FA.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.125%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1ST    day of each month beginning on AUGUST 1, 2002. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 1, 2032,    I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. BOX 7198
PASADENA, CA 91109-7198

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S.    $2,223.27.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000%    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Initials: ▮▮▮

LOAN #:

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
ROBYNNE A. FAULEY

PAY TO THE ORDER OF
RESIDENTIAL FUNDING CORPORATION
WITHOUT RECOURSE
WASHINGTON MUTUAL BANK, FA

BRENDA F. BRENDLE
VICE PRESIDENT

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as Trustee
Residential Funding Corporation

BY
Judy Faber, Vice President

[Sign Original Only]



BC: 619513

## NOTE ALLONGE

This Allonge is to be attached to and made a part of that certain Promissory Note made by Robynne A. Fauley, in the original principal amount of $330,000.00, dated June 12, 2002, and payable to Washington Mutual Bank, FA., as amended or modified (the "Note").

Pay to the order of Residential Funding Company, LLC, ("Assignee"), without recourse and without representation or warranty whether express, implied or created by operation of law.

DEUTSCHE BANK TRUST COMPANY AMERICAS, as Trustee Company FKA Bankers Trust Company of California, N.A. as Trustee Residential Funding Company, LLC formerly known as Residential Funding Corporation Attorney-in Fact

By: _____
Michael Mead, Limited Signing Officer

ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS
ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE

POOL:           0           LOAN ID:

NOTE DATE:       6/12/2002        LOAN AMOUNT:         $330,000.00

BORROWER NAME:   ROBYNNE A FAULEY

PROPERTY ADDRESS:   12125 SE SOUTHEAST LAUGHING WA, SANDY, OR 97055

PAY TO THE ORDER OF

**LNV** Corporation

WITHOUT RECOURSE

Residential Funding Company, LLC

By: 

Name: Jason J. Vecchio

Title: Post Funding Manager

Residential Funding Company, LLC

RECORDED IN CLACKAMAS COUNTY
JOHN KAUFFMAN    COUNTY CLERK    2002-057800

$106.00

003115782002005780000170174

06/20/2002 03:31:39 PM

M-TD  Cnt=1  Stn=3  BEVERLY
$85.00 $11.00 $10.00

When recorded mail to:
WASHINGTON MUTUAL BANK, FA
7757 BAYBERRY RD., 1ST FLOOR
JACKSONVILLE, FL 32256
ATTN CUSTODIAL LIAISON, MAILSTOP BBCL3

---

[Space Below This Line For Acknowledgment]

LOAN #:

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JUNE 12, 2002,** together with all Riders to this document.

**(B) "Borrower"** is **ROBYNNE A FAULEY.**

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is **WASHINGTON MUTUAL BANK, FA.**

Lender is a **FEDERAL SAVINGS BANK** organized and existing under the laws of **THE UNITED STATES OF AMERICA.** Lender's address is **7301 BAYMEADOWS WAY, JACKSONVILLE, FL 32256.**

Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **STEWART TITLE GUARANTY COMPANY.**

**(E) "Note"** means the promissory note signed by Borrower and dated **JUNE 12, 2002.** The Note states that Borrower owes Lender ************************THREE HUNDRED THIRTY THOUSAND AND NO/100 ********************************************** Dollars (U.S.  **$330,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JULY 1, 2032.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3038 1/01                                Page 1 of 8

Initials:                ORUDEED  0109

LOAN #: ███████

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY**                                [Type of Recording Jurisdiction] of   **CLACKAMAS**
[Name of Recording Jurisdiction]:
**SEE ATTACHMENT A.**

which currently has the address of    **12125 SOUTHEAST LAUGHING WATER ROAD, SANDY,**
                                                                                                [Street] [City]
Oregon     **97055**                    ("Property Address"):
         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Initials: _____
Form 3038 1/01                                    Page 2 of 8                                                ORUDEED



LOAN #: ▮▮▮▮▮

remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect, Borrower

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3038 1/01                                                        **Page 3 of 8**                                                        Initials: _____
                                                                                                                                         ORUDEED

LOAN #: ▉

acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3038 1/01                                  Page 4 of 8

Initials: _____

ORUDEED

LOAN #:

the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or Might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/ or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3038 1/01                                    Page 5 of 8

Initials: _____
ORUDEED

LOAN #: ▮

Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3038 1/01

Initials: 
ORUDEED

LOAN #: ███████

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

**27. Required Evidence of Property Insurance.**

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3038 1/01

Page 7 of 8

Initials: _____
ORUDEED

7

LOAN #: ████

apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
ROBYNNE A FAULEY

State of ~~OREGON~~ California          County of: Marin

This instrument was acknowledged before me on June 14, 2002
by _____ Robynne A. Fauley _____

KATHLEEN D. VARGAS
Commission # 1286476
Notary Public - California
Marin County
My Comm. Expires Jan 2, 2005

_____
Signature of Notarial Officer

Notary Public
Title (and Rank)

My commission expires: Jan. 02, 2005

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3038 1/01                    Page 8 of 8                    ORUDEED

After Recording Return To:

**PEELE MANAGEMENT CORPORATION**
ASSIGNMENT JOB #90822
P.O BOX 30014
RENO, NV. 89520-3014
(775) 827-9600

WM Loan No.

THIS DOCUMENT WAS PREPARED BY:

WASHINGTON MUTUAL BANK, FA
P.O. BOX 44090
JACKSONVILLE, FL 32231-9930
ATTN: CUSTODIAL LIAISON BB-CL3

Clackamas County Official Records    **2003-041141**
Sherry Hall, County Clerk
                                        $31.00

0045704320030041141002002B    04/03/2003 01:21:47 PM

M-TDA    Cnt=1  Stn=1 ELIZABETH
$10.00 $11.00 $10.00

---

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

For good and valuable consideration, the sufficiency of which is hereby acknowledged, the undersigned,
**WASHINGTON MUTUAL BANK, FA**

*36-005  4610*

whose address is 7301 Baymeadows Way, Jacksonville, Florida 32256-6833.    (GRANTOR)
By these presents does convey, grant, bargain, sell, assign, transfer and set over to:

Deutsche Bank Trust Company Americas as Trustee
3 Park Plaza, Sixteenth Floor, Irvine, CA 92614-8539    **(GRANTEE)**
the described Mortgage/Deed of Trust, together with the certain note(s) described therein with all interest, all liens and any rights
due or to become due thereon.

Said Mortgage/Deed of Trust is recorded in the County of    **Clackamas** State of    **Oregon**

Official Records on:
Original Mortgagor:    **ROBYNNE A FAULEY**

Original Loan Amount:    **$330,000.00**

Property Address:    **12125 SOUTHEAST LAUGHING WATER ROAD, SANDY, OR 97055**

Legal Municipality:    SEE ATTACHED LEGAL DESCRIPTION
Document #: *2002-057800*    BOOK:    PAGE:
*Recorded 6-20-02*
Date:    **July 29, 2002**    WASHINGTON MUTUAL BANK, FA

---

O. Simmons    Witness

D. Santana    Witness

M. Free    Assistant Vice President

Lori A. Brown    Assistant Secretary

**STATE OF FLORIDA**
**COUNTY OF DUVAL**

                    **29TH day of July , 2002**

The foregoing instrument was acknowledged before me this
by **M. Free** and **Lori A. Brown, Assistant Vice President** and **Assistant Secretary** of Washington Mutual Bank, FA,
A Federal Savings Bank, on behalf of the corporation. He/She is personally known to me and did take an oath.

Regina W. Anderson
MY COMMISSION #DD048265 EXPIRES
October 12, 2005
Bonded Thru Troy Fain Insurance, inc

Regina W Anderson    Notary Public
State of Florida At Large
My Commission Expires:    October 12, 2005

Exhibit C
Page 1 of 11
Exhibit 1
Page 26 of 47



Exhibit C
Page 2 of 11
Exhibit 1
Page 27 of 47

Exhibit "A"

Parcel 1, Partition Plat nO. 1999-041, in the County of
Clackamas and State of Oregon




Exhibit C
Page 3 of 11
Exhibit 1
Page 28 of 47

788979

Recording requested by:

When recorded mail to:

Litton Loan Servicing LP
4828 Loop Central Drive
Houston, TX 77081

FATCO. NO. 101408-7D

Clackamas County Official Records
Sherry Hall, County Clerk                    2007-038181

                                                        $26.00
01098354200700381810010012
                                        05/03/2007 10:09:23 AM
M-TDA        Cnt=1  Stn=10 LESLIE
$5.00 $11.00 $10.00

Space above this line for recorders use

TS # OR-07-79188-JB          Order # 3290940          Loan #  ▮▮▮▮▮▮

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to WASHINGTON MUTUAL BANK, FA all beneficial interest under that certain Deed of Trust dated 6/12/2002 executed by **ROBYNNE A FAULEY**, as Trustor(s) to **STEWART TITLE GUARANTY COMPANY**, as Trustee and recorded as Instrument No. **2002-057800**, on 6/20/2002, in Book **xxx**, Page **xxx** of Official Records, in the office of the County Recorder of **CLACKAMAS** County, **OR** together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated:   APR 1 1 2007

Residential Funding Company, LLC

By: _Denise Bailey_          Denise Bailey
            Assistant Secretary

State of _Texas_                )
                                )  ss
County of _Harris_              )

On  APR 1 1 2007  before me, _____ **Brenda F. McKinzy** _____ the undersigned Notary Public, personally appeared _____ Denise Bailey _____ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature  _Brenda F. McKinzy_   (Seal)

BRENDA F. MCKINZY
Notary Public, State of Texas
My Commission Expires
December 05, 2010

Exhibit C
Page 4 of 11
Exhibit 1
Page 29 of 47

Clackamas County Official Rec...s
Sherry Hall, County Clerk                    2008-074676

$41.00

012595372008074676030037

10/31/2008 02:17:25 PM

M-TDA          Cnt=1  Stn=10 ELIZABETH
$15.00 $16.00 $10.00

BC 619 513
This Document Prepared By and
After Recording Please Return To:
MGC Mortgage, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

## CORRECTIVE ASSIGNMENT OF DEED OF TRUST
(This Assignment is being recorded to corrected chain of assignments.)

**Grantor:**   Deutsche Bank Trust Company Americas (formerly known as Bankers Trust
         Company) as Trustee
         1761 East St. Andrew Place, Santa Ana, Ca 92705

**Grantee:**   Residential Funding Company, LLC
         One Meridian Crossings, Suite 100, Minneapolis, MN 55423

**Property Address:**   12125 Southeast Laughing Water Road, Sandy, OR 97055

**Legal Description:** Parcel 1, Partition Plat No. 1999-041, in the County of Clackamas and
State of Oregon.

BC:619513                                    1

Exhibit C
Page 5 of 11
Exhibit 1
Page 30 of 47

# ASSIGNMENT OF DEED OF TRUST

THIS ASSIGNMENT OF DEED OF TRUST (this "Assignment") is made by DEUTSCHE BANK TRUST COMPANY AMERICAS (formerly known as Bankers Trust Company) as Trustee, whose address is 1761 East St. Andrew Place, Santa Ana, CA 92705, ("Assignor"), to and in favor of RESIDENTIAL FUNDING COMPANY LLC., whose address is One Meridian Crossings, Suite 100, Minneapolis, Minnesota 55423 ("Assignee").

THIS ASSIGNMENT WITNESSES THAT, in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid by Assignee, Assignor hereby assigns, transfers, sets over and conveys to Assignee and its successors and assigns, without recourse and without representation or warranty, whether express, implied or created by operation of law, except as expressly set forth in the Purchase Agreement, the following:

1.   that certain Deed of Trust from Robynne A. Fauley, dated June 12, 2002, and recorded June 20, 2002, as Instrument No 2002-057800, in the Clerk's Office of the County of Clackamas, State of Oregon, (the "Deed of Trust"), which Deed of Trust secures that certain Promissory Note dated June 12, 2002, in the original principal amount of $330,000.00, executed by Robynne A. Fauley and payable to the order of Washington Mutual Bank, FA., as modified or amended (the "Note");

2.   Assigned to Deutsche Bank Trust Company Americas as Trustee by Assignment dated July 29, 2002, recorded on April 3, 2003, as Instrument No. 2003-041141, in the Clerk's Office of the County of Clackamas, State of Oregon.

3.   Assigned to Washington Mutual by Assignment dated April 11, 2007, recorded on May 3, 2007, as Instrument No. 2007-038181, in the Clerk's Office of the County of Clackamas, State of Oregon.

4.   as such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Deed of Trust and/or the Note and/or the loan evidenced by the Note, including without limitation the title insurance policies and hazard insurance policies relating thereto that are in effect.

BC:619513

2

Exhibit C
Page 6 of 11
Exhibit 1
Page 31 of 47

**IN WITNESS WHEREOF,** Assignor has caused this Assignment to be executed and delivered by its Authorized Representative as of the 27th day of October, 2008.

Deutsche Bank Trust Company Americas (formerly known as Bankers Trust Company) as Trustee, Residential Funding Company, LLC formerly known as Residential Funding Corporation Attorney-in Fact

_____                  By: _____
WITNESS: Pamela L. Spencer                          Name: Michael Mead
                                                    Title:   Limited Signing Officer

_____
WITNESS: B. Zahn                                    **POA recorded on 2/7/2003, as Instr. No. 2003-016512.**

## ACKNOWLEDGMENT

STATE OF MINNESOTA          §
                            §
COUNTY OF HENNEPIN          §

Before me, the undersigned, a Notary Public, on this day personally appeared Michael Mead, who is personally well known to me (or sufficiently proven) to be the Limited Signing Officer of Residential Funding Company, LLC formerly known as Residential Funding Corporation and the person who executed the foregoing instrument by virtue of the authority vested in him/her, and he/she acknowledged to me that he/she executed the same for the purposes and consideration therein expressed and in the capacities therein stated.

Given under my hand and seal this 27th day of October, 2008.

_____
Notary Public, State of Minnesota
My commission expires: 01-31-2008

A F F I X  NOTARY SEAL

DIANE M. MUSTAD
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2009

BC:619513                              3

Exhibit C
Page 7 of 11
Exhibit 1
Page 32 of 47



Clackamas County Official Records
Sherry Hall, County Clerk          **2008-074677**

$36.00

012595382008007467700020027    10/31/2008 02:17:25 PM

M-TDA          Cnt=1  Stn=10 ELIZABETH
$10.00 $16.00 $10.00

This Document Prepared By and
After Recording Please Return To:
MGC MORTGAGE, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

## ASSIGNMENT OF DEED OF TRUST

Grantor:    RESIDENTIAL FUNDING COMPANY, LLC
            One Meridian Crossings, Suite 100, Minneapolis, Minnesota 55423

Grantee:    LNV CORPORATION
            7195 Dallas Parkway, Plano, Texas 75024

Property Address:    12125 Southeast Laughing Water Road, Sandy, OR 97055

Legal Description: Parcel 1, Partition Plat No. 1999-041, in the County of Clackamas and State of Oregon.

BC 619513

Exhibit C
Page 8 of 11
Exhibit 1
Page 33 of 47

CORPORATION ASSIGNMENT of DEED OF TRUST

RFC Loan Number: ████
Seller Loan Number: 

FOR VALUE RECEIVED, 'Residential Funding Company, LLC fka Residential Funding Corporation'

the undersigned hereby grants, assigns and transfers to

all beneficial interest under that certain Deed of Trust dated 6/12/2002

executed by ROBYNNE A FAULEY

TO/FOR:

and recorded in Book _N/A_ on Page _N/A_ as Instrument No. 2002-057800 on 6/20/2002
of official Records in the County Recorder's Office of _Clackamas_ County, Oregon.

Property Address:    12125 SE SOUTHEAST LAUGHING WA  SANDY, OR  97055
MORTGAGE AMOUNT: $330,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

'Residential Funding Company, LLC fka Residential Funding Corporation'

BY: _____
NAME: Jeanne J. Smith
TITLE: Assistant Vice President

STATE OF                         Minnesota )
COUNTY OF                        Hennepin )

On 3-10-2008  Before me, the undersigned, a Notary Public in and for said State personally appeared Jeanne J.
Smith, Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation'
personally known to me to be the person whose name is subscribed to the within instrument and acknowledged
to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument
the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000

_____
Notary Public in and for said State

(Area to right reserved for Recording)

WHEN RECORDED MAIL TO:

Prepared By and when recorded
Please return to: MGC Mortgage Inc.
Document Control Dept.
7198 Dallas Parkway
Plano, TX 75024

BC 614513



Exhibit C
Page 9 of 11
Exhibit 1
Page 34 of 47

Clackamas County Official Records          2008-074677
Sherry Hall, County Clerk

$36.00

01259538202007467700000270      10/31/2008 02:17:25 PM
M-TDA          Cnt=1  Stn=10 ELIZABETH
$10.00 $16.00 $10.00

Clackamas County Official Records          2012-023399
Sherry Hall, County Clerk

$52.00

0157444420120023399002C0029      04/17/2012 12:01:27 PM
M-TDA          Cnt=1  Stn=5 CONNIEBRO
$10.00 $16.00 $18.00 $10.00

This Document Prepared By and
After Recording Please Return To:
MGC MORTGAGE, INC.
Attn: Allison Martin, Manager
Document Control
7195 Dallas Parkway
Plano, Texas 75024

## ASSIGNMENT OF DEED OF TRUST

Grantor:    RESIDENTIAL FUNDING COMPANY, LLC
            One Meridian Crossings, Suite 100, Minneapolis, Minnesota 55423

Grantee:    LNV CORPORATION
            7195 Dallas Parkway, Plano, Texas 75024

Property Address:    12125 Southeast Laughing Water Road, Sandy, OR 97055

Legal Description: Parcel 1, Partition Plat No. 1999-041, in the County of Clackamas and
State of Oregon.

Re-recorded at the request of LNV Corporation
to add Grantee name & address on Original
Assignment.
Previously Recorded: 10/31/08 as Inst. No. 2008-074677

BC 619513

Exhibit C
Page 10 of 11
Exhibit 1
Page 35 of 47



CORPORATION ASSIGNMENT of DEED OF TRUST

RFC Loan Number: ▮
Seller Loan Number: ▮

FOR VALUE RECEIVED, 'Residential Funding Company, LLC fka Residential Funding Corporation'

the undersigned hereby grants, assigns and transfers to

*LNV Corporation*
*7195 Dallas pkwy*
*Plano, Tx 75024*

all beneficial interest under that certain Deed of Trust dated 6/12/2002

executed by ROBYNNE A FAULEY

TO FOR:

and recorded in Book *N/A* on Page *N/A* as Instrument No. *2002-057800* on *6/20/2002*
of official Records in the County Recorder's Office of *Clackamas* County, Oregon.

Property Address:   12125 SE SOUTHEAST LAUGHING WA  SANDY, OR  97055
MORTGAGE AMOUNT:  $330,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust

'Residential Funding Company, LLC fka Residential Funding Corporation'

BY _____

STATE OF                          Minnesota )         NAME: Jeanne J. Smith
COUNTY OF                         Hennepin )          TITLE: Assistant Vice President

On 3/18/2008, before me, the undersigned, a Notary Public in and for said State personally appeared Jeanne J.
Smith, Assistant Vice President of 'Residential Funding Company, LLC fka Residential Funding Corporation'
personally known to me to be the person whose name is subscribed to the within instrument and acknowledged
to me that she executed the same in his/her authorized capacity, and that by his/her signature on the instrument
the entity upon behalf of which the person acted, executed the instrument.  WITNESS my hand and official seal.

This instrument was drafted by Diane Meistad,
Residential Funding Company, LLC, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423.
(952) 979-4000.

_Diane Meistad_
Notary Public in and for said State

(Area to right reserved for recording)

WHEN RECORDED MAIL TO

Prepared By and when recorded
Please return to MGE Mortgage Inc.
Document Control Dept.
7195 Dallas Parkway
Plano, TX 75024
BC 213503

Exhibit C
Page 11 of 11
Exhibit 1
Page 36 of 47

**After recording, return to:**

LNV Corporation
c/o MGC Mortgage, Inc.
Attn: Jeremy Cobb
7195 Dallas Parkway
Plano, TX 75024



RECEIVED

JAN 07 2015

DEPARTMENT OF JUSTICE
PORTLAND LEGAL

### OREGON FORECLOSURE AVOIDANCE PROGRAM
## BENEFICIARY EXEMPTION AFFIDAVIT

| Lender/Beneficiary: | LNV Corporation |
|---|---|
| Jurisdiction* | Nevada |

*If Lender/Beneficiary is not a natural person, provide the state or other jurisdiction in which the Lender/Beneficiary is organized.

I, Grant Hamilton, VP, Compliance & Operations ___ (printed name) being first duly sworn, depose, and state that:

This affidavit is submitted for a claim of exemption to the Office of the Attorney General of Oregon under Oregon Laws 2013, chapter 304, §2(1)(b).

1. The above named individual or entity commenced or caused an affiliate or agent of the individual or entity to commence  the following number of actions to foreclose a residential trust deed by advertisement and sale under ORS 86.752 or by suit under ORS 88.010 during the calendar year preceding the date of this affidavit: 6 _____ [not to exceed 175].

2. The undersigned further certifies that she/he: [check only one of the following boxes]
   [___] is the individual claiming exemption from requirements established under Or Laws 2013, ch 304  or
   [✓] is the Authorized Loan Servicer _____ [insert title] of the entity claiming exemption from requirements established under Or Laws 2013, ch 304, and is authorized by such entity to execute this affidavit on its behalf.

_____
(Signature)

State of  Texas ___ )
                     ) ss.
County of  Collin ___ )

Signed and sworn to (or affirmed) before me this 7th ___ day of January _____ 2015
by  Grant Hamilton, Vice President, Compliance & Operations, MGC Mortgage, Inc. _____

Notary Public for  State Texas ___
My commission expires:  12-8-2018 ___

JACQUE LITTLEFIELD
My Commission Expires
December 8, 2018

Form 300 V7/5/13

Exhibit D
Page 1 of 1

Exhibit 1
Page 37 of 47

Case 3:15-cv-01422-HZ   Document 1-5   Filed 07/29/15   Page 1 of 1

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LNV Corporation

## DEFENDANTS
Robynne A. Fauley, U.S. Bank National Association

**(b)** County of Residence of First Listed Plaintiff   Collin Co. (Texas)
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Clackamas
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Erick J. Haynie | Gabrielle D. Richards | Jeffrey M. Peterson
Perkins Coie LLP | 1120 NW Couch, Tenth Floor | Portland, OR 97209

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1 U.S. Government Plaintiff
- ❏ 2 U.S. Government Defendant
- ❏ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance<br>❏ 120 Marine<br>❏ 130 Miller Act<br>❏ 140 Negotiable Instrument<br>❏ 150 Recovery of Overpayment & Enforcement of Judgment<br>❏ 151 Medicare Act<br>❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>❏ 153 Recovery of Overpayment of Veteran's Benefits<br>❏ 160 Stockholders' Suits<br>❏ 190 Other Contract<br>❏ 195 Contract Product Liability<br>❏ 196 Franchise | **PERSONAL INJURY**<br>❏ 310 Airplane<br>❏ 315 Airplane Product Liability<br>❏ 320 Assault, Libel & Slander<br>❏ 330 Federal Employers' Liability<br>❏ 340 Marine<br>❏ 345 Marine Product Liability<br>❏ 350 Motor Vehicle<br>❏ 355 Motor Vehicle Product Liability<br>❏ 360 Other Personal Injury<br>❏ 362 Personal Injury - Medical Malpractice | ❏ 625 Drug Related Seizure of Property 21 USC 881<br>❏ 690 Other | ❏ 422 Appeal 28 USC 158<br>❏ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>❏ 820 Copyrights<br>❏ 830 Patent<br>❏ 840 Trademark | ❏ 375 False Claims Act<br>❏ 400 State Reapportionment<br>❏ 410 Antitrust<br>❏ 430 Banks and Banking<br>❏ 450 Commerce<br>❏ 460 Deportation<br>❏ 470 Racketeer Influenced and Corrupt Organizations<br>❏ 480 Consumer Credit<br>❏ 490 Cable/Sat TV<br>❏ 850 Securities/Commodities/ Exchange |
| | **PERSONAL INJURY**<br>❏ 365 Personal Injury - Product Liability<br>❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>❏ 368 Asbestos Personal Injury Product Liability | **LABOR**<br>❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY**<br>❏ 861 HIA (1395ff)<br>❏ 862 Black Lung (923)<br>❏ 863 DIWC/DIWW (405(g))<br>❏ 864 SSID Title XVI<br>❏ 865 RSI (405(g)) | ❏ 890 Other Statutory Actions<br>❏ 891 Agricultural Acts<br>❏ 893 Environmental Matters<br>❏ 895 Freedom of Information Act<br>❏ 896 Arbitration |
| **REAL PROPERTY**<br>❏ 210 Land Condemnation<br>☒ 220 Foreclosure<br>❏ 230 Rent Lease & Ejectment<br>❏ 240 Torts to Land<br>❏ 245 Tort Product Liability<br>❏ 290 All Other Real Property | **PERSONAL PROPERTY**<br>❏ 370 Other Fraud<br>❏ 371 Truth in Lending<br>❏ 380 Other Personal Property Damage<br>❏ 385 Property Damage Product Liability<br>**CIVIL RIGHTS**<br>❏ 440 Other Civil Rights<br>❏ 441 Voting<br>❏ 442 Employment<br>❏ 443 Housing/ Accommodations<br>❏ 445 Amer. w/Disabilities - Employment<br>❏ 446 Amer. w/Disabilities - Other<br>❏ 448 Education | ❏ 720 Labor/Management Relations<br>❏ 740 Railway Labor Act<br>❏ 751 Family and Medical Leave Act<br>❏ 790 Other Labor Litigation<br>❏ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS**<br>❏ 870 Taxes (U.S. Plaintiff or Defendant)<br>❏ 871 IRS—Third Party 26 USC 7609 | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>❏ 950 Constitutionality of State Statutes |
| | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>❏ 463 Alien Detainee<br>❏ 510 Motions to Vacate Sentence<br>❏ 530 General<br>❏ 535 Death Penalty<br>**Other:**<br>❏ 540 Mandamus & Other<br>❏ 550 Civil Rights<br>❏ 555 Prison Condition<br>❏ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>❏ 462 Naturalization Application<br>❏ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Judicial Foreclosure/Diversity

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $   443,101.54

CHECK YES only if demanded in complaint:
JURY DEMAND:   ❏ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE   07/29/2015

SIGNATURE OF ATTORNEY OF RECORD   s/Erick J. Haynie

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Exhibit 1
Page 38 of 47

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

LNV CORPORATION                                    Case No.: 3:15−cv−01422−HZ
Plaintiff(s),

v.

ROBYNNE A. FAULEY, et al.
Defendant(s).

_____ /

### Civil Case Assignment Order

**1.    Presiding Judge:** The above referenced case has been filed in the Portland Division of the U.S. District Court for the District of Oregon and assigned to:

Presiding Judge......................Hon. Marco A. Hernandez
Presiding Judge's Suffix Code*...........................HZ

**\*These letters must follow the case number on all future filings.**

**2.    Courtroom Deputy Clerk:** Questions about the status or scheduling of this case should be directed to:

Michelle Rawson
Telephone: 503−326−8051
Email: michelle_rawson@ord.uscourts.gov

**3.    Case Administrator/Docket Clerk:** Questions about filings or docket entries in this case should be directed to:

Telephone: 503−326−8050

**4.    Place of Filing:** Any paper filings must be submitted to the Clerk of Court, Mark O. Hatfield U.S. Courthouse, 1000 S.W. Third Ave., Portland, OR, 97204. (*See* LR 3−1, LR 5−5.)

**5.    District Court Website:** Information about local rules of practice, CM/ECF electronic filing requirements, responsibility to redact personal identifiers from filings, and other related information can be found on the Court's website at ord.uscourts.gov.

**6.    Consent to a Magistrate Judge:** In accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all United States Magistrate Judges in the District of Oregon are certified to exercise civil jurisdiction in assigned cases and, with the consent of the parties, enter final orders on dispositive motions, conduct trial, and enter final judgment, which may be appealed directly to the Ninth Circuit Court of Appeals.

Parties are encouraged to consent to the jurisdiction of a Magistrate Judge by signing and filing the (attached) Consent to Jurisdiction by a United States Magistrate Judge and Designation of the Normal Appeal Route. (*See* LR 5−5(c).) There will be no adverse consequences if a party elects not to

Exhibit 1
Page 39 of 47

consent to a Magistrate Judge. A Magistrate Judge, however, may be able to resolve a case earlier as they are primarily assigned only to civil cases.

Additional information about United States Magistrate Judges in the District of Oregon is available on the Court's website.

**DATED:  July 30, 2015**                              **MARY L. MORAN**
                                                        **Clerk of Court**

                                              by:  /s/ D. St. Germain _____
                                                    D. St. Germain, Deputy Clerk

Exhibit 1
Page 40 of 47

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

**LNV CORPORATION**                                    Case No.: **3:15−cv−01422−HZ**
Plaintiff(s),

v.

**ROBYNNE A. FAULEY, et al.**
Defendant(s).

_____ /

### Discovery and Pretrial Scheduling Order

To facilitate discovery and the effective management of this case, the Court orders that:

1.    **Discovery and Pretrial Deadlines:**  Unless otherwise ordered by the Court, the parties shall,

    a.    within 120 days of this Order:
        i.     File all pleadings pursuant to Fed. R. Civ. P. 7(a) and 15;
        ii.    Join all claims, remedies, and parties pursuant to Fed. R. Civ. P. 18 and 19;
        iii.   File all pretrial, discovery, and dispositive motions;
        iv.    Complete all discovery; and
        v.     Confer as to Alternate Dispute Resolution pursuant to LR 16−4(c).

    b.    within 150 days of this Order:
        i.     File a Joint ADR Report pursuant to LR 16−4(d); and
        ii.    File a Proposed Pretrial Order pursuant to LR 16−5.

2.    **Corporate Disclosure Statement:** In accordance with Fed. R. Civ. P. 7.1 and LR 7.1−1, any non−governmental corporate party must file a corporate disclosure statement concurrently with its first appearance (*See also* LR 83−9).

3.    **Initial Conference of Counsel for Discovery Planning:**

    a.    Except in cases exempted under Fed. R. Civ. P. 26(a)(1)(B), upon learning the identity of counsel for Defendant(s), counsel for the Plaintiff(s) must initiate communications with counsel for Defendant(s).

    b.    All counsel must then confer as required by Fed. R. Civ. P. 26(f) within thirty (30) days after a defendant files a repsonsive pleading or a motion under Fed. R. Civ. P. 12. (*See* LR 26−1.)

    c.    Counsel should also discuss their client's positions regarding:

        i.     Consent to a Magistrate Judge; and
        ii.    Alternate Dispute Resolution options. ADR options include judicial settlement conferences or Court−sponsored mediation with highly qualified lawyer−mediators. Court−sponsored mediators agree to conduct mediation without cost to the Court or parties for four (4) hours, exclusive of preparation and travel time to and from the agreed location for mediation. Parties are encouraged to visit the Court's website for additional ADR information, including mediator biographies,

Exhibit 1
Page 41 of 47

subject−matter expertise, and contact information.

      d.    If counsel for all of the parties agree to forgo the initial disclosures required by Fed. R. Civ. P. 26(a)(1), they shall file with the Court the Fed. R. Civ. P. 26(a) Discovery Agreement form issued with this order (*See* LR 26−2). Whether or not the parties agree to forgo the initial disclosures, they may seek discovery once the initial conference of counsel for discovery planning contemplated by Fed. R. Civ. P. 26(f) has occurred. (*See* LR 26−1.)

**4.**    **Rule 16 Court Conference for Scheduling and Planning:** Counsel for Plaintiff(s) and for Defendant(s) must, during or promptly after the conference of counsel referred to in section 3 above, contact the assigned judge's courtroom deputy clerk to schedule a Rule 16 Conference for scheduling and planning. (*See* LR 16−2.)

At the Rule 16 Conference, the parties must be prepared to discuss discovery, whether there is consent to a Magistrate Judge, and any scheduling or other issues, including any requested modifications to the initial scheduling order set forth in section 1 above, and possible submission of trial exhibits electronically (*See* LR 5−6(b)).

**5.**    **Service of this Order:** Counsel for the Plaintiff (the "filing party") must serve this order and all attachments upon all other parties to the action. (In cases removed to this Court, the removing defendant is considered the "filing party.") (*See* LR 3−5.) A *pro se* filing party is required to serve this order and all attachments upon all other parties to the action.

**DATED:  July 30, 2015**                      **MARY L. MORAN**
                                            **Clerk of Court**

                        by:  /s/ D. St. Germain
                                 D. St. Germain, Deputy Clerk

Exhibit 1
Page 42 of 47

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**LNV CORPORATION**                                    Case No.: 3:15−cv−01422−HZ
Plaintiff(s),

v.

**ROBYNNE A. FAULEY, et al.**
Defendant(s).

_____ /

### Fed. R. Civ. P. 26(a)(1) Discovery Agreement

Pursuant to LR 26−2, I state that the parties who have been served and who are not in default have agreed to forgo the disclosures required by Fed. R. Civ. P. 26(a)(1).

**DATED:** _____

Signature: _____

Name and OSB ID: _____

E−mail Address: _____

Firm Name: _____

Mailing Address: _____

City, State, Zip: _____

Parties Represented: _____

cc:  Counsel of Record

Exhibit 1
Page 43 of 47

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**LNV CORPORATION**                                   Case No.: 3:15−cv−01422−HZ
**Plaintiff(s),**

v.

**ROBYNNE A. FAULEY, et al.**
**Defendant(s).**

_____ /

### Consent to Jurisdiction by a Magistrate Judge
### and Designation of the Normal Appeal Route

      Pursuant to Fed. R. Civ. P 73(b), as counsel for the party (parties) identified below, I consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including entry of orders on dispositive motions, trial, and entry of final judgment. I understand that withholding consent will not result in any adverse consequences. Pursuant to Fed. R. Civ. P. 73(c), I agree that an appeal from a judgment entered at a Magistrate Judge's direction may be taken to the court of appeals as would any other appeal from a district court judgment.

**DATED:** _____

Signature: _____

Name and OSB ID: _____

E−mail Address: _____

Firm Name: _____

Mailing Address: _____

City, State, Zip: _____

Parties Represented: _____

cc: Counsel of Record

Exhibit 1
Page 44 of 47

### U.S. District Court − Oregon
### Civil Case Management Time Schedules

| Local Rule | Event or Requirement | Time Frame | Comment |
|---|---|---|---|
| LR 16−1(d) | Discovery and Pretrial Scheduling Order (with attachments) | Issued by the Clerk's Office at new civil case initiation, along with the summons | Required to be served on all parties by the filing party (*See* LR 3−5) |
| LR 26−1 | Initial Conference for Discovery Planning | Within 30 days of a defendant filing a responsive pleading or a motion under Fed. R. Civ. P. 12 | Held between the parties |
| LR 16−2 | Rule 16 Conference | Scheduled by the assigned judge after the required LR 26−1 initial discovery planning conference | Affirmative duty on all counsel to contact the assigned judge's courtroom deputy (*See* LR 16−2(a)) |
| LR 16−4(c) | ADR Conference Requirements | Within 120 days from the date the Discovery and Pretrial Scheduling Order is issued | Parties must confer with other attorneys and unrepresented parties to discuss ADR options |
| | Joint Status Report | Within 120 days from the date the Discovery and Pretrial Scheduling Order is issued | Required in cases assigned to Judge Jones |
| LR 16−2(e) | Completion of Discovery | Unless otherwise ordered by the Court, within 120 days from the date the Discovery and Pretrial Scheduling Order is issued | Discovery deadlines are set forth in the Discovery and Pretrial Scheduling Order |
| LR 16−4(d) | Joint ADR Report | Within 150 days from the date the Discovery and Pretrial Scheduling Order is issued | The parties must file a Joint ADR Report |
| LR 16−5 | Joint Proposed Pretrial Order | Unless otherwise modified pursuant to LR 16−5(a), within 150 days from the date the Discovery and Pretrial Scheduling Order is issued | The Joint Proposed Pretrial Order filing deadline is established in the Discovery and Pretrial Scheduling Order |
| LR 16−4(f)(2)(B) | Notice to the Court that the Parties Are Unable to Select a Court−sponsored Mediator from the Court's list of mediators | Within fourteen (14) days after entry of a court order referring a case for Court−sponsored mediation | Plaintiff's attorney (or the *pro se* plaintiff) is responsible for notifying the assigned judge who will then designate a mediator |
| LR 16−4(h)(1) | Notification of Private ADR Results | Not later than seven (7) days after the conclusion of private ADR proceedings | Plaintiff's attorney (or the *pro se* plaintiff) is responsible for notifying the court |
| LR 16−4(h)(2) | Report of Court−sponsored Mediator | Not later than seven (7) days following the conclusion of the mediation if no settlement is achieved | Court−sponsored mediator is responsible for notifying the court |

Exhibit 1
Page 45 of 47

**Duque, Michelle  (Perkins Coie)**

| | |
|---|---|
| **From:** | Federal Court |
| **Sent:** | Thursday, July 30, 2015 10:32 AM |
| **To:** | nobody@ord.uscourts.gov |
| **Subject:** | Activity in Case 3:15-cv-01422-HZ LNV Corporation v. Fauley et al Discovery order |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Oregon**

**Notice of Electronic Filing**

The following transaction was entered on 7/30/2015 at 10:32 AM PDT and filed on 7/30/2015
**Case Name:**        LNV Corporation v. Fauley et al
**Case Number:**      3:15-cv-01422-HZ
**Filer:**
**Document Number:** 3

**Docket Text:**
**Notice of Case Assignment to Judge Marco A. Hernandez and Discovery and Pretrial Scheduling Order. NOTICE: Counsel shall print and serve the summonses and all documents issued by the Clerk at the time of filing upon all named parties in accordance with Local Rule 3-5. Discovery is to be completed by 11/27/2015. Joint Alternate Dispute Resolution Report is due by 12/28/2015. Pretrial Order is due by 12/28/2015. Ordered by Judge Marco A. Hernandez. (dsg)**

**3:15-cv-01422-HZ Notice has been electronically mailed to:**

Jeffrey M. Peterson   docketpor@perkinscoie.com, jeffreypeterson@perkinscoie.com, adargis@perkinscoie.com

Gabrielle D. Richards   docketpor@perkinscoie.com, dknebel@perkinscoie.com, grichards@perkinscoie.com

Erick J. Haynie   mduque@perkinscoie.com, docketpor@perkinscoie.com, ehaynie@perkinscoie.com, danderson@perkinscoie.com

**3:15-cv-01422-HZ Notice will not be electronically mailed to:**

Exhibit 1
Page 46 of 47

2

Exhibit 1
Page 47 of 47